May it please the court, my name is Clark Speaks. I represent Marvin Powell in this matter and the issue presented is whether the district court erred in denying Mr. Powell's 2255 motion. In his 2255 motion he... Did you speak up a little? Yes sir. He claimed that his trial counsel was ineffective and that she failed to raise objection or bring to the court's attention an issue of claim. He has to demonstrate, the petitioner would have to demonstrate performance below an objective standard of reasonableness and demonstrate that the deficient performance was prejudicial. And the facts here are that Mr. Powell was charged with crimes, he was... jury trial was about to commence, jury selection was complete and there was a break. The people in the courtroom left, they went to lunch or had some other kind of break. When they're filing back into the courtroom, as they're going through courthouse security, a lady says something to Mr. Powell's father who is right in front of Mr. Powell. She says everything will be alright, but you need to give your son a kick in the butt. And Mr. Powell hears that, Mr. Powell's father hears that. And so it causes them some concern. They go on into the courthouse and they see that she goes into the juror room and so they talk to Mr. Powell's attorney about it and bring it to her attention. And she's able to, using the documents, ascertain who it is that made the statement. Then she files back and sits right in the jury pool and so that's... in the jury box. So that's where... So... But even after the And even after she ascertained the identity of the proponent of that statement, she didn't object, she didn't bring it to the court's attention, she did not inquire any further. And so the... Well, let me ask you, well, you just described the statement. That sounds to me, I suppose it could be read one of two ways. You don't need to worry about your son might suggest that there was nothing that she was inclined to favor the defendant in the case and that he just needed a swift kick and a button and nothing else. Or I suppose it could be read as suggesting that perhaps she intended to do something with respect to the guilt or innocence of the defendant or perhaps in sentencing. But given that the statement was ambivalent, why couldn't a reasonable lawyer, depending on the how the voir dire had gone up to that moment in time, decided that it would be better not to say anything? I think that's the central issue of the prejudice. I think I understand your question. The fact is that I don't think that she had enough information to make that decision intelligently. I would equate it to or analogize it. But we don't know, right? I guess we don't know. She was there. The voir dire had been completed by then, right? Right. It had been completed. She had spent some time with the juror, presumably had either heard the judge ask questions or ask questions herself and might have formed an opinion about the juror that suggested that that was someone that she wanted to keep. And this statement in and of itself just wasn't enough to cause her to want to raise it with the court and perhaps have that juror kicked off the veneer. That seems to me to be eminently reasonable. And I don't, if in fact that's a logical conclusion from these facts, then I'm not sure how you would It's information that requires further investigation. Why is it she may have concluded when the juror said everything is going to be all right. I don't know how you construe that, but when that person says everything's all right to her father, it seems to be that's a statement of assurance to him. And then the following statement, if that is so, then the following statement was court proceedings, that's going to be all right. You just make sure you take care of your son and discipline him. That's certainly one possibility. What's the other? The other possibility, if you discover that a friend has a family member, a parent, a child that's dying of something, you might say to that person, everything's going to be all right, you know, leave it to God, leave it to the doctors. They're not saying necessarily your son or your father is going to walk out of this procedure unscathed. They are saying life will go on. There are different, the point of this whole thing. That's fairly neutral, isn't it? That doesn't show bias. It basically says, if that's the interpretation, then she's saying the process will be fine, it'll be fair, but you do need to kick him. But I don't see how you could read that first clause to suggest that she was going to do something hostile to the boy or had decided to do something as a juror. But I think at the very least it's ambiguous. I think it has several potential meanings, but they may seem to be more like assurances. And the attorney very well just said, hey, that's an okay juror. Judge, my point would be that it's an indication, it's like a doctor who sees a lump. When the doctor sees a lump, he has an obligation to investigate further. He can't come back later and say... It's what the attorney determines. In other words, if the attorney has a range of choices, we shouldn't decide what choice is appropriate. Fair. And I understand that. I've been in that position myself, and I understand that. I do think it's different here, where that statement could have different meanings. And the attorney, I think it's improper for the attorney to make a judgment during the course of trial. And the attorney could even think, and I don't know if it's appropriate, could even think, I've got a juror there that looks fairly friendly, and I'm going to keep that juror on the panel. It's hard to say, but the point is, the burden is to show that the attorney in that circumstances was not acting as an attorney should be acting. And we can't say that on this record, can we? Well, so I think what the case law suggests is that we can't look at it in hindsight and be money morning quarterback, and I don't intend to do that. But I think the case law suggests is that we kind of go back to that day and think, what would a reasonable lawyer do under those circumstances? But there's so many instances where people get in some... younger individuals get in some sort of scrape or another, and whether it's a police officer or a friend or somebody else has said, well, there's nothing this person needs. This person doesn't need jail time. There's nothing that this person needs so much as good parental scolding or good parental kick in the butt. You know, that not everything needs to be handled through the channels of the criminal law or whatever. I mean, to me, I think all of us have heard that off and on for a long time. That nothing this... nothing this... this kid's a good kid basically. Nothing this individual needs except a little parental guidance or discipline or scolding or whatever. And that... that... but that would be fairly innocuous. We're not... Well, if we look back at that day, I think we would consider the circumstances surrounding that day. It's a federal jury trial. In a state jury trial, jury selection might last a half a day, a day or even longer. Federal jury trials, at least in the Eastern District of North Carolina, jury selection is a truncated process. It might last an hour. So we are literally starving for information. We're making assessments on impartiality and fairness based on a person's shoes, a person's clothing, whether they're disheveled, whether the age, their expressions, their reactions, those types of things. So we're literally starving for information. So I don't think that there's a whole lot of information against which this... this statement, ambiguous as it was, was evaluated. The point has been made that voir dire has been completed. The jury has been empaneled and has been set. There are just a lot of reasons at that stage of proceedings that a defense counsel wouldn't want to unsettle the whole... the whole matter. You've got to go back, have the juror quiz. The defense would be the one that's challenging him. The other jurors presumably would be aware of that. Supposedly, ineffective assistance of counsel is a fairly high bar. And we... there's a danger here of, as has been pointed out many, many times before, using hindsight to rake attorneys over the coals who do perfectly reasonable things. Well, Judge, it's not my intention to rake anyone over the coals, but I definitely see your point. Because more often than not, I'm the person at the beginning of this process than I am at the end. You know, you're familiar. You just pointed out that when you're picking juries, and I picked a lot of juries just like you did, you look at every little thing. You look at reactions, whether they rolled their eyes, how they're dressed, how they work, what they did. And you're seeking clues. And my point in my earlier questions was that's exactly what could have happened here, is that this clue could be a pretty positive clue in the selection process, and that the attorney wanted to leave it alone. And if that is a possibility, then we can't go back and say, oh, she had to bring that to the attention of the judge, or he. I don't know who the attorney was, but the defendant's attorney had to bring it to the attention of the judge. The defendant's attorney says, either it's much to do about nothing, or even more difficult for your position, that juror is going to be a good juror. Well, that first phrase is a pretty powerful phrase for your client. Everything's going to be all right. Unless, it depends on how it's read. It depends on your interpretation. Sure, but the attorneys have a range, and you agree to have a range of decisions, and that in and of itself takes it out of the realm of ineffective assistance of counsel, but leaves it to a judgment question made by counsel. Well, what I would say is that I've tried to envision the circumstances under which I would say this to another parent. Your child needs a kick in the butt. Like, if I'm not in... We have to put the first phrase in, too, because that's very important to balance it, because it's... The second phrase is in contrast to the first. First says, everything's going to be all right. That's in a statement of assurance. Certainly. The second state is, you ought to discipline your son. Now, I don't know how that shows, necessarily shows, or what that shows, but as an attorney, I wouldn't all of a sudden jump up and say, I have to go to the court. I'd think about it. Just like you and I would think about it when we pick jurors. We look at whether they twitch their ear, you know, or how they react to a question, and all these intuitions that attorneys get in a courtroom. So, I've seen kids on soccer fields, and I coach soccer and basketball, and I've seen dozens who needed a kick in the butt. Never once have it crossed my mind to actually say this to someone. And I would also point out, too... Now, imagine you're a father, you're coming into a courtroom, you've cleared courthouse security, and with trembling hands, you put your keys and your change into the tray, and you go through. And now, a child who's now an adult, who you've seen born and bathed, and made sure they ate their peas and carrots, and got home on time, and worried about bullies, and those types of things, and decorated Christmas trees, and hidden elves on shelves. And now, as your fearful father is entering the courthouse, someone turns to them and says, under those circumstances, your son needs a kick in the butt. Admittedly, the person says, everything will be all right. But that person has to have some pretty strong feelings at that point, in order to be able to say that to any parent, but especially a parent under those circumstances. The circumstances become critical. That attorney, his attorney, did not know whether he means everything's going to be all right, as you say to someone whose parent is dying, or child is dying? Let me ask you this. So, I guess there are two separate issues in this case, versus whether your client is entitled to relief, just on the record as it exists. But then there's the separate issue of whether or not the judge, in this case, the district court, should have held an evidentiary hearing on the question. You want to address that? I mean, because we don't have, you know, we're speculating as to what the attorney was thinking at the time. And as I recall, the record is silent, because the attorney wasn't asked to provide an affidavit, and or to testify at any hearing. Well, I do think the problem may be that, first of all, I think that there should have been an investigation, that the jury should have asked questions at the time. So, absent that, I'm sorry, the attorney should have asked, made an inquiry at the time. Secondly, it would be appropriate to have an evidentiary hearing. The problem with an evidentiary hearing conducted now is, can you get the people back and recreate that hearing, and speak to this juror, and find out what the depths of her perceptions were? What was the basis? Because even though it may be your child needs a kick in the butt,  Those are not, those kind of basic general character issues are not what's at issue here. This is a federal criminal trial, where somebody is either guilty or not guilty. We're not having information about, he stayed up too late, he didn't write his grandmother, he didn't, he talked in class. That's not the information that's being considered under these circumstances. The information that's being considered under these circumstances is, he either committed a federal crime or he did not. He is either guilty or he is not. And that's the situation where she comes into court. I see that my time is up. Yeah, did you reserve some for rebuttal? Yes, sir. Okay, thank you. Thank you, sir. Mr. Wood, let's hear your side of it. Thank you. May it please the court, good morning. My name is Seth Wood. I represent the United States. Under the first prong of Strickland, I agree with opposing counsel that the question is, could a reasonable attorney decide not to take action based on the facts alleged by the defendant here? Those factors are accepted as true because we filed the motion under Rule 12b-6. So we were testing the legal sufficiency of his factual allegations. I agree with Judge Niemeyer that taken as a whole, the language about, it'll be all right, that's language of reassurance. And an attorney certainly could take that into account in deciding how to respond and what action to take, if any. If I could draw a very brief contrast between the statement made in this, allegedly made in this case and another case where one could look at it and determine that there was some kind of preconceived notion of an outcome. In Conaway v. Polk, there was a juror bias claim raised. And one of the claims was that the juror stated, in a capital case, if he's guilty, he should die. I'm paraphrasing. But that kind of statement, obviously, is a preconceived notion as to the penalty that should apply in a capital case. It's very different from the alleged facts that we have here. It's also worth taking into account the timing of this case, when the statement was allegedly made. It's after Vordeer. Vordeer was on the 15th of June. There's a question posed to us. If we assume that the statement was made, could a reasonable attorney have declined to take action? Is that, is the statement posed in a manner that we can resolve it here without a remand? Yes, Your Honor, because you can assume the facts made and then determine whether an objectively reasonable attorney would or wouldn't take action. And what is your, give us your reasoning as to why, if we assume the statement was made, why an objective attorney, a reasonably objective attorney could decline to take action, just based on those facts that are before us without amplification of a hearing record? Yes, Your Honor. Given the two points made in the father's affidavit from the juror, that it will be all right, and then the second statement, which refers more to a parental and child relationship, not a state and individual relationship, we think a reasonable juror, a reasonable attorney could approach that in a couple of different ways. A reasonable attorney could look at that and say, I need to raise this. But a reasonable attorney could also look at that and say, this seems like a favorable situation. It's also worth considering that- A reasonable attorney could take one of two routes. Either just let it alone or ask for a further war deed. Given the statement, even if it's not the only cause of action a reasonable attorney could take, as long as it is a permissible cause of action for a reasonable attorney to take. You think that's enough, even though it wouldn't necessarily be an exclusively dictated cause, course of action? Yes, yes, Judge Wilkinson. If the attorney, when asking what an objectively reasonable attorney would do, it's reasonable to consider, would an objectively reasonable attorney, could an objectively reasonable attorney do what happened here? That doesn't mean that that's the only thing, that we're not saying that an objectively reasonable attorney had to do this. We're simply saying that they could do that, and we think that's enough. It's also worth considering the timing of- In other words, there can be, there are situations where there can be several options, both of which may be reasonable. Yes. Yes, Your Honor. We agree with that. The reasonableness is even more apparent given where this case was. We had voir dire on the 15th. The jury was impaneled after this statement was allegedly made on the 17th. And so, although voir dire had formally been completed, we didn't have any evidence. There was no argument made. Nothing really had been put forward. And so, this is essentially, at least substantively, kind of a voir dire question. When provided information about a juror, what action do you- Except that, I guess that cuts both ways because there's been no evidence presented, and yet the juror is suggesting that the defendant, in this case, needs some kind of disciplinary action. I suppose one could argue that she's made some judgment about his conduct in the case. I agree that one could read it, one could read it that way, and one could read it the way that we're trying to argue it. But the point I'm trying to make about the voir dire idea is that from Connor versus Polk, actions of counsel during voir dire are presumed to be strategic. And that's because of all the different factors that Judge Niemeyer, you were talking about, and opposing counsel was talking about. There's a lot going on in that situation, and any attorney has to decide, make decisions, and move forward. In assessing whether to raise the issue to the court, any attorney, any objectively reasonable attorney has to consider both the likelihood of success and any possible negative consequences from that. When the statement was made, had the jury been selected, were the final 12 picked? I believe, yes, from the docket, that appears to be the case, Your Honor, yes. So they were picked on the 15th, the way Judge Fox. I know, but at the time the comment was made, that had already occurred. Correct, yes, Your Honor. And they were sworn in on the 17th after the statement was made. Is there any reason why, this is going outside the record, but why the government in this case wouldn't have simply gotten a declaration or an affidavit from the lawyer to put this to bed? In hindsight, of course, one could always think that that's the better course. The panel has 16 claim, 20 to 55, each one a little bit different, and we just made the determination to challenge the legal sufficiency of most of his claims. He filed a summary judgment motion on another claim, the one about whether counsel had shared a plea agreement with him. We got an affidavit on that because we obviously wanted to address that head on. And because of that, we had a hearing. But we did not believe that the statement, even if made, amounted to ineffective assistance of counsel. From our brief, of course, we're also arguing that there's no prejudice in this case because there's no reasonable likelihood of a different outcome had counsel raised the issue. If the court doesn't have any other questions, we'll rest on our brief. Thank you, we ask to affirm. Mr. Speaks, do you have rebuttal time? Yes, sir. Thank you, sir. So it seems that the central discussion revolves around this issue of what was meant by the statement and what were the interpretations of it. Certainly one interpretation is, don't worry about it, it's going to be okay. You know, my question is, who's going to be okay? If you see someone who has experienced something difficult, where they might win or might lose, whether it's an important game or an important life event, or, you know, and you see someone who's nervous, who's scared, who's fearful, it makes sense to say it's going to be okay. That doesn't mean, that is not the same thing as your son is going to be found not guilty and he's going out the back door with you today. That doesn't mean that. There's nothing to suggest that there are any character issues being discussed here about what kind of person he was to need a kick in the butt. This is a person who says to a father under these circumstances, a complete stranger in a courtroom setting, your son needs a kick in the butt. Meaning she has made a definitive judgment, not about his character, his character is not at issue, about his conduct. And his conduct is the subject of this trial. There has been not one witness called, not one piece of evidence, but yet based on her view of whatever the questions were that were asked by a judge, not statements made, not as presented, she has determined prior to anything happening that that person needs a kick in the butt. That means she has made an assessment of his character, not his character, but his conduct. She has the entire purpose of, when we try to pick jurors based on very limited information in a federal process, what you're doing is you are looking to try to figure out from somebody's appearance or reaction or expression, can these people be impartial? Can these people leave their preconceptions and consider this case strictly on the evidence that's presented in this courtroom? But the same judgment that's exercised during the course of voir dire is also the same kind of judgment that would be exercised in the wake of the comment. In other words, the attorney is allowed discretion both at the voir dire stage and as you've just mentioned, Mr. Speaks, in gauging the reaction of the juror. Wouldn't the attorney likewise be accorded a certain reaction in gauging the facial expressions, the tone of voice, and the like of the juror during the fleeting courtroom encounter? In other words, if the statement were less ambiguous or whatever, it would probably fall out of the range of reasonable judgment. But given the ambiguity of it, isn't there a certain latitude that a defendant's lawyer has in assessing the characteristics of somebody? I mean, that's right at the heart of a turn of legal judgment. I think the ambiguity of it is the very reason why she's compelled to investigate further. Because if this juror has made a determination that this person is engaged in conduct that would warrant and there's no evidence presented, she has a very strong feeling about him under the circumstances. And one difference and distinction between this scenario and a scenario where this might come out in voir dire, in voir dire, the whole jury is sitting there and the jury pool is out here. So if you're going to ask questions or go up and challenge a juror under those circumstances, that's going to be potentially inflammatory. So I see, hey, we make those calls all the time. I don't want to press this juror on this issue because it might make this juror feel uncomfortable and singled out and ostracized. And then if this juror is seated, that's going to have a negative impact on how she perceives or he perceives our case. This is not that scenario. This is a scenario where this attorney could have gone up to the judge, Judge Fox, who is dedicated to providing a fair and impartial environment. I think he would, I don't mean to speak for him, but I am almost certain that he would have tried to engage in a communication to find out what the depths of this preconception were in a way that would have protected the defendant and his attorney from any kind of negative response from that juror or any other jurors. It could be done very easily. The juror could be, the jury could be impaneled. This juror, and I'm almost certain, I know I've seen it done. I can't say it's Judge Fox, but it may have been another judge, but it can bring this juror back. Hey, it's been said that somebody observed that you have seen this, said this thing. Can you tell me what you meant? Can you tell me? And then at that point, attorneys for the government, do you have any concerns? Attorneys for the defendant, do you have any concerns? And Judge Fox will actually bring people up to the bench and ask if you have those kinds of concerns. I see my time is up. Do we run the risk of challenging attorneys broadly for failure to exercise a challenge for cause or a peremptory strike against jurors when they see them? I say, oh, you had this piece of information. You should have inquired further. Or you had this, you know, you knew this, or this was an observable trait, or this juror gave this response and you didn't push further. In other words, I am concerned about invading a very discretionary area of turf with respect to defense counsel, which is, you know, how to, how to proceed in voir dire and in exercising strikes and the less, you know, if there is, and the like. If there is an area for legal judgment and for judgment calls, judgment calls in gray areas, might not this be it? Judge, I see my time is up. May I respond? Sure. Judge, I think this is distinct from that scenario. First of all, I completely understand that. Again, usually, I am on the, in the trial level and that is exactly what should be the case. I think this is a little bit of a different scenario because the jury selection process was concluded. It was over. There was nothing left. This was a statement made outside that demonstrated that you might have a problem with a juror who has pre, got some preconceptions which might just end this, you know, if this person is powerful within that jury room. And I think under those circumstances, in an ambiguous context, when the statement is ambiguous, it, a reasonable lawyer would inquire further, would investigate further or would, at the very least, explain to her client, listen, this is the concern that I have with pursuing this further. I don't want to do this and have some basis for a given that position. Well, if he had done that, I think we would still be here, right? Wouldn't we? Because we have given, the court has given the explanation that presumably the lawyer would have given and you find that to be unreasonable. Well, I don't think there is any evidence of what her, that it was a strategic decision. No, no, but we've, we've sort of made some assumptions about what a reasonable lawyer would do and you're suggesting that if that lawyer had simply communicated to the father what her strategic choice would have been that that would have solved the problem. But I don't think so if you disagree with her choice. I think the reasonable thing would be to gather more information in order to make a proper decision, in order to make a proper diagnosis, just like with a medical scenario. You don't make life altering decisions with inadequate information. But however, at least we would... You know what, you know what the hearing is going to say, the hearing is going to say, I thought all in all     into voir dire that I thought all things being considered this was somebody that I was going to go back to the jury and I was going to go back to the jury because I wanted to serve on the jury or at least did not feel strong enough to toss out. I mean, I can almost tell you verbatim what the lawyer is going to say. He said, I didn't, given the tone of the statement, I didn't think it was serious. I didn't even get the impression the juror was biased. On balance, I would like for the juror to have said I didn't challenge the juror for a reason I didn't want to go back into the voir dire and upset the voir dire. So, I mean, that's what the hearing is going to say. That's what the lawyer is going to say. And then, you know, what more do we know than we know now? Judge, I would argue that's the reason it's unreasonable because I think that's probably exactly what this lawyer would say or the lawyer would say. But I think the important thing to recognize is that that demonstrates that the need for that it's unreasonable to do that without gathering more information. Like, if she were to say this was a judgment call, then what would be the harm in gathering more information so that you can make a better decision? Like, it's not a situation where the rest of the jury panel is going to be negatively impacted. This would be an individual thing. And I think that there's absolutely no harm to anybody for gathering more information. More information in order to make a decision is seldom a bad idea. Thank you for your time. Thank you. We thank you, Mr. Speaks, and I see that you're court-assigned and I really want to thank you on behalf of the court for the fine job you've done this morning. Thank you. We'd like to come down and re-counsel
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz